**CASE NO. 13-3280**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**JOSEPH COLES,
Petitioner-Appellant,**

**v.**

**KEITH SMITH, WARDEN,
Respondent-Appellee.**

On Appeal from the United States District Court
for the Northern District of Ohio, Eastern Division
Case No. 1:10cv000525

---

**RESPONDENT-APPELLEE'S BRIEF**

---

MICHAEL DEWINE
Ohio Attorney General

Hilda Rosenberg (0043814)
Assistant Attorney General
Lead Counsel
Criminal Justice Section
441 Vine Street, 1600 Carew Tower
Cincinnati, Ohio 45202
(513) 852-3497
Fax (513) 852-3484

Counsel for Respondent-Appellee

## <u>TABLE OF CONTENTS</u>

<u>PAGE</u>

TABLE OF AUTHORITIES.................................................................... ii

STATEMENT REGARDING ORAL ARGUMENT ................................................ 1

ISSUES PRESENTED FOR REVIEW ............................................................. 2

STATEMENT OF THE CASE .................................................................... 3

STATEMENT OF FACTS ......................................................................... 9

SUMMARY OF ARGUMENT .................................................................. 12

STANDARD OF REVIEW....................................................................... 15

ARGUMENT ...................................................................................... 16

I.      COLES RECEIVED NOTICE OF THE 43 RAPE COUNTS UNDER
THE RELEVANT CONSTITUTIONAL STANDARD................................. 16

II.     THE PROSECUTOR'S COMMENTS IN CLOSING ARGUMENT DID
NOT RENDER COLES'S TRIAL FUNDAMENTALLY UNFAIR..................34

CONCLUSION......................................................................................45

CERTIFICATE OF COMPLIANCE............................................................. 46

CERTIFICATE OF SERVICE..................................................................... 46

ADDENDUM......................................................................................... 47

DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS....................48

# TABLE OF AUTHORITIES

## FEDERAL CASES

PAGE

*Alexander v. Louisiana,* 405 U.S. 625 (1972)............................................16, 29

*Apprendi v. New Jersey*, 530 U.S. 466 (2000)............................................. 16

*Benton v. Maryland,* 395 U.S. 784 (1969).....................................................32

*Blackmon v. Booker*, 696 F.3d 536 (6th Cir. 2012),
*cert. denied*, 133 S. Ct. 1501 (2013).................................................36, 43, 44

*Blake v. Morford,* 563 F.2d 248 (6th Cir. 1977)............................................ 30

*Bray v. Andrews*, 640 F.3d 731 (6th Cir. 2011)............................................30

*Calderon v. Prunty,* 59 F.3d 1005 (9th Cir.1995)..........................................23

*Carmona v. Johnson*, No. CV 12-7616 GAF (FFM), 2013 WL 2456619
(C.D. Cal. June 5, 2013)..............................................................................23

*Cole v. Arkansas,* 333 U.S. 196 (1948))............................................. 8, 17, 18

*Cowherd v. Million,* 260 Fed. Appx. 781 (6th Cir. 2008)............................... 22

*Cristini v. McKee*, 526 F.3d 888 (6th Cir. 2008)........................................... 39

*Darden v. Wainwright*, 477 U.S. 168 (1986)...........................................*passim*

*Dobek v. Berghuis,* No. 2:08-CV-13968, 2011 U.S. Dist. LEXIS 18551
(E.D. Mich. February 25, 2011), *aff'd*, 474 Fed. Appx. 447 (6th Cir. 2012)....39

*Donnelly v. DeChristoforo,* 416 U.S. 637 (1974)..........................................35

*Dowling v. United States*, 493 U.S. 342 (1990)............................................ 35

*Eberhardt v. Bordenkircher*, 605 F.2d 275 (6th Cir. 1979)............................44

*Egler v. Brunsman*, No. 3:09cv02163, 2010 WL 5463808
(N. D. Ohio Dec. 29, 2010).......................................................................... 22

*Freeman v. Tibbals,* No. 1:12cv2557, 2013 WL 4874112
(N.D. Ohio Sept. 11, 2013)...........................................................................22

*Gautt v. Lewis*, 489 F.3d 993 (9th Cir. 2007)................................................ 23

*Gillard v. Mitchell,* 445 F.3d 883 (6th Cir. 2006)........................................ 39

*Greer v. Miller,* 483 U.S. 756 (1987)............................................................39

*Harrington v. Richter*, 131 S. Ct. 770 (2011)..........................15, 30, 32, 35, 44

*Hodge v. Hurley,* 426 F.3d 368 (6th Cir. 2005).............................................39

*Hurtado v. California,* 110 U.S. 516 (1884)............................................16, 29

*In re Oliver,* 333 U.S. 257 (1948).................................................................17

*Jackson v. Whetsel,* 388 Fed. Appx. 795 (10th Cir. 2010)..............................33

*James v. Reese,* 546 F.2d 325 (9th Cir. 1976)..........................................16, 29

*Kappos v. Hanks,* 54 F.3d 365 (7th Cir.1995)..............................................41

*Koontz v. Glossa,* 731 F.2d 365 (6th Cir. 1984)...........................................17

*Lankford v. Idaho,* 500 U.S. 110 (1991)...................................................8, 18

*Lawwill v. Pineda,* No. 1:08cv2840, 2011 U.S. Dist. LEXIS 52419
(N.D. Ohio May 16, 2011)...............................16, 24, 28, 29, 33, 34

*McDonald v. City of Chicago*, 130 S. Ct. 3020 (2010).....................................16

*McKinney v. Ludwick,* 649 F.3d 484 (6th Cir. 2011)
*cert. denied*, 132 S. Ct. 1559 (2012).............................................15

*Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986)...........................................30

*Missouri v. Hunter,* 459 U.S. 359 (1983)................................................... 33

*Mitchell v. Forsyth,* 472 U.S. 511 (1985).................................................. 33

*Morrison v. Estelle,* 981 F.2d 425 (9th Cir. 1992)......................................... 23

*Ohio v. Johnson,* 467 U.S. 493 (1984))...................................................... 32

*O'Sullivan v. Boerckel,* 526 U.S. 838 (1999)................................................ 40

*Palazzolo v. Gorcyca,* 244 F.3d 512 (6th Cir. 2001)........................................ 32

*Parker v. Matthews*, 132 S. Ct. 2148 (2012)...................................28, 34, 35, 44

*Perry v. Tibbles,* No. 5:12cv802, 2013 WL 4680483
(N.D. Ohio Aug. 30, 2013)..............................................................................22

*Renico v. Lett*, 130 S. Ct. 1855 (2010)..........................................28, 30, 31, 44

*Robert N. Clemens Trust v. Morgan Stanley DW, Inc.*, 485 F.3d 840
(6th Cir. 2007)...............................................................................................34

*Rogers v. Mississippi*, No. 3:07cv600TSL-FKB, 2011 U.S. Dist. LEXIS 90870
(S.D. Miss. Feb. 18, 2011), *adopted in part*, 2011 U.S. Dist. LEXIS 90867 (S.D.
Miss. Aug. 15, 2011).....................................................................................28

*Russell v. United States*, 369 U.S. 749 (1962).........................................12, 29

*Smith v. Phillips*, 455 U.S. 209 (1982).............................................................35

*St. Mary's Foundry, Inc. v. Employers Insurance of Wausau*,
332 F.3d 989 (6th Cir. 2003)..........................................................................40

*Thompson v. Bradshaw,* No. 1:04CV2204, 2007 U.S. Dist. LEXIS 51203
(N.D. Ohio July 16, 2007)............................................................................. 24

*Tucker v. Palmer*, 541 F.3d 652 (6th Cir. 2008)..............................................42

*United States v. Carroll*, 26 F.3d 1380 (6th Cir. 1994)....................................44

*United States v. Clark,* 1991 U.S. App. LEXIS 6681 (6th Cir. 1991)................34

*United States v. Hastings,* 461 U.S. 499 (1983)..............................................35

*United States v. Phillip,* 948 F.2d 241 (6th Cir. 1991)....................................40

*United States v. Pungitore,* 910 F.2d 1084 (3d Cir. 1990)..............................41

*United States v. Williams*, 544 F.3d 683 (6th Cir. 2008)................................34

*United States v. Young*, 470 U.S. 1 (1985)...............................................35, 39

*Valentine v. Konteh*, 395 F.3d 626 (6th Cir. 2005).....................6, 22, 29, 31, 33

*Warren v. Smith*, 161 F.3d 358 (6th Cir. 1998)................................................ 9

*Watson v. Greene,* 640 F.3d 501 (2nd Cir.),
*cert. denied*, 132 S. Ct. 335  (2011)................................................................31

*Watson v. Jago,* 558 F.2d 330 (6th Cir. 1977)................................................17

*Williams v. Taylor,* 529 U.S. 362 (2000) ........................................................15

*Yaacov v. Hudson,* No. 1:08CV0507, 2009 U.S. Dist. LEXIS 126899
(N.D. Ohio Oct. 7, 2009)................................................................................26

*Yarborough v. Alvarado*, 541 U.S. 652 (2004...........................................15, 35

## **FEDERAL STATUTES AND RULES**

28 U.S.C. § 2254 ............................................................................... 15

28 U.S.C. § 2254(d) ..................................................................... .15, 29

28 U.S.C. § 2254(d)(1).......................................................................44

28 U.S.C. § 2254(e)............................................................................25

28 U.S.C. § 2254(e)(1)....................................................................9,46

## **STATEMENT REGARDING ORAL ARGUMENT**

Respondent-Appellee believes that the facts and legal arguments are adequately presented in the briefs and the record. The decisional process would not be significantly aided by oral argument.

## ISSUE PRESENTED FOR REVIEW

I.     Whether the Ohio Court of Appeals' decision--that  Coles received adequate notice of the 43 rape counts--involved an unreasonable application of or was contrary to relevant Supreme Court precedents under the Sixth and Fourteenth Amendments.

II.    Whether the Ohio Court of Appeals' decision--that  Coles was not denied due process by the prosecutor's comments in closing argument--involved an unreasonable application of or was contrary to the fundamental fairness standard established in *Darden v. Wainwright,* 477 U.S. 168 (1986).

## STATEMENT OF THE CASE

### A.   State Proceedings

In 2006, the Cuyahoga County Grand Jury charged Coles in a 242-count indictment with rape, kidnapping, gross sexual imposition, and child endangering. The victim was S.D., his stepdaughter. (R. 7-18, Ex. 1a, Indictment, Page ID # 307-435; R. 7-19, Ex. 1b, Indictment, Page ID # 436-551).  The first 111 counts, occurring from January 8, 1998 through January 7, 2001 when S.D. was under the age of thirteen, charged Coles with 37 counts of kidnapping with sexual motivation specifications, 37 counts of rape, and 37 counts of gross sexual imposition. (R. 7-18, Ex. 1a, Indictment, Page ID # 307-417). The remaining counts, occurring from January 8, 2001 through January 5, 2004,[1] charged Coles with 43 counts of kidnapping with sexual motivation specifications, 43 counts of rape, 43 counts of gross sexual imposition, and two counts of child endangering.  (R. 7-18, Ex. 1a, Indictment, Page ID # 418-435; R. 7-19, Ex. 1b, Indictment, Page ID # 436-551). At the close of the state's case, the prosecution dismissed counts 24 through 37, 62 through 74 and 99 through 111.  (R. 7-20, Exhibit 3, Journal Entry of 9/28/06, Page ID # 553).

On September 27, 2006, the jury found Coles guilty of 43 counts of rape and 43 counts of gross sexual imposition, occurring when S.D. was over the age of thirteen. The jury acquitted Coles of the rape, kidnapping and gross sexual imposition charges relating to the time when S.D. was under the age of thirteen, and also found him not guilty of the remaining kidnapping and child

---

[1] The timeframe was expanded by the bill of particulars to July 5, 2004.  (R. 13-1, Bill of Particulars, Page ID # 2006-2040).

endangering charges. (R. 7-20, Exhibit 4, Judgment of Conviction, Page ID # 554-555). The trial court imposed consecutive five-year terms for each of the 42 counts of rape and concurrent six-month sentences on each count of gross sexual imposition, to be served concurrent to the rape sentences.[2]  The total sentence was 210 years. (R. 7-20, Ex. 5, Sentencing Judgment, Page ID # 556-557).  The trial court also classified Coles as a sexual predator. (R. 7-20, Exhibit 6,  Journal Entry of 11/21/06, Page ID # 558-559).

On July 18, 2007, the trial court corrected the sentencing entry.  He resentenced Coles to a five-year concurrent term for the missing rape count and also memorialized the previously omitted not guilty verdict on count 42 (R. 7-20, Exhibit 11, Sentencing Judgment of 7/26/07, Page ID # 577-578).

In his appeal to the Ohio Court of Appeals, Coles identified nine assignments of error.  They included claims that the "identical and undifferentiated indictments" failed to provide him proper notice of the charges, that the admission of other acts evidence and the prosecutor's comments in closing argument deprived him of a fair trial, that the evidence was insufficient to support the convictions and that his trial counsel was ineffective.  (R. 7-20, Ex.  13, Appellant's Brief, Page ID # 582-668).   Finding insufficient evidence to support the GSI convictions, the appellate court reversed the judgment as to the GSI convictions and sentences, directing the trial court to correct the sentencing entry by vacating them. (R. 7-21, Ex. 15, Ohio Court of Appeals

---

[2] Although Coles was convicted of 43 counts of rape, the trial judge inadvertently failed to impose sentence on one of the counts. (*See* R. 7-20, Ex 13, Appellant's Brief, Page ID # 591).

Opinion, Page ID # 716).   The Court affirmed the judgment as to the rape convictions and sentences.[3]  (*Id.*).

Coles appealed to the Ohio Supreme Court (R. 7-21, Ex. 19, Memorandum in Support of Jurisdiction, Page ID # 721), but the Court declined jurisdiction to consider his appeal  (R. 7-21, Ex. 20, Ohio Supreme Court Entry, Page ID # 772).

### B.    Federal Proceedings

Represented by counsel, Coles filed a federal petition for a writ of habeas corpus, alleging:

> **GROUND ONE:**  Petitioner's rights to due process and notice were violated because his indictment charged hundreds of identical undifferentiated counts of misconduct that allegedly occurred over an extended period of time.

> **GROUND TWO:**  Petitioner's right to due process was violated because his 43 rape convictions were based on speculation, which does not constitute evidence sufficient to establish guilt beyond a reasonable doubt.

> **GROUND THREE:**  Petitioner was deprived his right to a fair trial by a fair and impartial jury because the jury was exposed to improper and unfairly prejudicial evidence during the prosecutor's case in chief.

> **GROUND FOUR:**   Petitioner's rights to due process and a fair trial were violated where the prosecutor committed misconduct during closing argument by vouching for his witness's credibility and improperly attacking the petitioner's character.

---

[3] As directed, the trial court vacated the GSI convictions and sentences, but the correction had no effect on Coles's total sentence of 210 years.  (R. 7-21, Exhibit 16, Sentencing Entry of 10/31/08, Page ID #717; R. 7-21, Ex. 17, Journal Entry of 11/12/08, Page ID # 718).

**GROUND FIVE:** Due process, fundamental fairness and the prohibition against ex post facto laws were violated when petitioner was sentenced under a judicially altered retroactively applied and substantially disadvantageous statutory framework.

**GROUND SIX:** Petitioner's 42 consecutive sentences totaling 210 years are contrary to law and violate due process because the trial court failed to make and articulate findings and reasons required to justify them.

(R. 1, Petition, Page ID # 5, 7, 8, 10, 12; *see id.*, Attachment C, Statement in Support of Petition, Page ID # 23-35). The Warden answered the petition, submitting the state court record and trial transcripts. (R. 7, Return of Writ, Page ID # 48-88).

On August 19, 2011, the Magistrate Judge issued a Report and Recommendation, recommending that the writ be granted in part. (R. 14, Report & Recommendation, Page ID # 2043). The Magistrate Judge determined that "S.D.'s testimony at trial was sufficient to support hundreds of instances of rape between January 8, 2001 and January 7, 2004" because S.D. testified that "rapes occurred once a week, twice a week, or nearly every day." (*Id.* at Page ID # 2076). Despite finding that there was sufficient evidence to support the 43 rape counts, she concluded that S.D.'s testimony only provided adequate notice of six distinguishable rape counts. (*Id.* at Page ID # 2068-2069). Based on this Court's decision in *Valentine v. Konteh*, 395 F.3d 626 (6th Cir. 2005), she found that the indictment and trial failed to provide Coles adequate notice of or protection against double jeopardy for the remaining 37 rape counts. She concluded: "Consequently, his indictment and trial were not a reasonable application of clearly established federal law, as interpreted by the

Sixth Circuit in *Valentine*." (*Id.* at Page ID # 2073).  As the remedy, the report recommended that the state vacate these 37 rape counts or the federal court grant the writ. (*Id.* at Page ID # 2043).

The Report recommended that the second, fourth, fifth and sixth grounds for relief be dismissed as without merit and that ground three (admission of prior bad acts) be dismissed as procedurally defaulted.  (*Id.* at Page ID # 2089). Of the three comments cited by Coles as prosecutorial misconduct in ground four, the Magistrate Judge concluded that one was not improper and the remaining two did not deprive Coles of a fair trial.   (*Id.* at Page ID # 2080-2081).

Both parties filed objections.  (R. 16, Coles's Objections, Page ID # 2094-2119; R. 17, Warden's Objections, Page ID # 2168-2190).  The Warden and Coles raised objections to the Magistrate Judge's analysis and resolution of ground one challenging the indictment.  Coles also objected to her conclusion that the evidence was sufficient to support 43 rape counts  (ground two)  and that the prosecutor's comments in closing argument did not deprive him of due process (ground four).  (See R. 18, Order, Page ID # 2237-2238).

The district court denied the writ.  (R. 18, Order, Page ID # 2255).  The court adopted the Magistrate Judge's recommendation as to grounds two through six, but rejected her recommendation as to ground one, the insufficient indictment claim. (*Id.*). The court determined that for purposes of AEDPA review the relevant clearly established federal law was "Supreme Court precedent examining the Sixth Amendment's guarantee that in all criminal

prosecution, defendants must be informed of the nature and cause of the accusation." (*Id.* at Page ID #2241-2242). Neither *Valentine*, a Sixth Circuit case, nor Supreme Court cases analyzing federal indictments under the Fifth Amendment (upon which *Valentine* relies) were applicable. (*Id.* at Page ID # 2241, 2245). According to the district court, the relevant standard was whether criminal defendants were "informed of the nature and cause of the charges, so that they have the opportunity to identify the issues on which the decision may turn, . . . and defend themselves against the charges." (*Id.* at Page ID # 2246 citing *Lankford v. Idaho,* 500 U.S. 110, 126 n. 22 (1991) and *Cole v. Arkansas,* 333 U.S. 196, 201 (1948)). Between the indictment which alleged the relevant time period and the offense, the bill of particulars which identified the victim and location and the trial testimony recounting at least 43 rapes, the state court had determined that Coles received the requisite notice. The district court concluded that the state court decision was not contrary to the relevant Supreme Court law. (*Id.* at Page ID # 2246).

Finding that "[p]etitioner [wa]s not being convicted for the same crime twice or being punished multiple times for the same criminal offense," the district court also concluded that double jeopardy concerns were not implicated. (*Id.* at Page ID # 2248)

The district court granted a certificate of appealability with respect to Coles's first ground for relief challenging the sufficiency of his indictment and his fourth ground alleging prosecutorial misconduct (R. 18, Order, Page ID # 2256). This appeal followed.

## STATEMENT OF FACTS

The Ohio Court of Appeals summarized the facts underlying Coles's convictions and the testimony introduced at trial, as follows:[4]

[¶5] S.D. was born on January 8, 1988.  When she was six years old, her mother began dating Coles. S.D. testified that Coles lived with her and her mom in Lakewood and, in April 1998, Dawn gave birth to a son. S.D. testified that she was ten years old when Coles began to molest her. She and Coles were watching television when he touched her vagina. She went to bed and awoke to him touching her vagina.  She told him to go away and he did. S.D. testified that the same scenario occurred "every once in awhile" thereafter.  S.D. testified that she told her mother about the incident a week after it occurred.  Dawn called social services, which developed a safety plan and "closed" the case.  S.D. went to live with her grandparents for the rest of the summer.  When she returned to the house, S.D. testified that she felt safe because her mother never left her alone with Coles.

[¶6] S.D. remembered that the abuse recommenced in the summer of her sixth-grade year, or 2000, when she, her mother, and her younger brother moved to West 114th Street in Cleveland. S.D. testified that while her mother was at work, Coles would have sex with S.D. in his bedroom or in the living room.  She testified that she could not remember details, only "him sticking the head of his penis into my vagina and saying not to worry about it, because I won't get pregnant."  But S.D. did get pregnant, and had an abortion when she was twelve years old.  She told everyone that someone at school had impregnated her, but it was really Coles. She stated that she had lied because nobody believed her when she reported the abuse the first time.

[¶7] In June 2001, the family moved back to Lakewood, where the abuse started again at the end of the summer. S.D. testified that Coles would wake her up at night and make her have sex with him.  She described how Coles would either lay on top of her or force her to get on top of him and have vaginal intercourse

---

[4] These binding factual findings "shall be presumed to be correct" in the absence of "clear and convincing evidence" otherwise.  28 U.S.C. § 2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998). The federal district court determined that there was sufficient evidence to support the convictions and declined to certify this issue for appeal. (R. 18, Order, Page ID #2249-2251, 2255).

with her.  She stated that it happened often, probably twice a week.

[¶8] In June 2002, the family moved to Parma, and Coles lived with them.  She testified that Coles forced her to have sex with him in the basement, his bedroom, or her bedroom while her mother was at work and during the night.  She testified that the abuse happened almost every day.  S.D. further testified that Coles convinced her mother to put S.D. on birth control pills.  Dawn married Coles in April 2003.

[¶9] S.D. learned she was pregnant again in March 2004. She told her mother that she had become pregnant by a boy at school, even though it was Coles who had impregnated her. S.D. testified that she had another abortion, even though she did not want to. She testified that a week after the April 2, 2004 abortion, Coles told her that she should be healed and forced her to have sex with him again and that the sex occurred a couple times a week thereafter until the family moved to Iowa in July 2004.

[¶10] After the family moved to Iowa, the abuse continued. In June 2005, S.D. finally told her mother about Coles' "raping" her and that the pregnancies were the result of his abuse.  S.D. moved back to Cleveland to live with relatives and Dawn reported the abuse to Iowa police.  Dawn testified that Coles called her shortly after S.D. returned to Ohio and admitted that he and S.D. were "lovers."  Dawn further testified that Coles stated during the same conversation that it was he who wanted to break off his relationship with S.D. now that he was married to Dawn.

[¶11] S.D. testified that after she went to live with relatives in Cleveland, she did not get along with them and wanted to live with Coles' mother. She testified that Coles' mother would not allow her to move in until she signed a document admitting that she had fabricated the allegations against Coles. S.D. refused, but after a bad night staying in a "crack house," S.D. called Coles' mother and said she would recant her allegations. S.D. composed a short statement recanting her allegations, which was admitted into evidence.

[¶12] Coles called various family members to the stand, all of whom testified that they knew S.D. well and described her relationship with Coles as "normal."  Coles' mother testified that S.D. was manipulative, and she denied pressuring S.D. to recant her allegations.  Coles testified that he never raped S.D., got her pregnant, or confessed to Dawn that he and S.D. were "lovers."

(R. 7-21, Ex. 15, Ohio Court of Appeals Opinion, Page ID # 690-693).

## SUMMARY OF ARGUMENT

In assessing whether Coles received constitutionally adequate notice of the 43 rape counts, the relevant question is whether he was informed of the nature and cause of the charges so that he had the opportunity to identify the issues on which the decision may turn and defend himself against the charges. A state defendant facing criminal prosecution does not have a Fifth Amendment right to indictment by grand jury because that amendment only applies to federal defendants. He does have a right to notice of the charges under the Sixth and Fourteenth Amendments which the Supreme Court and this court have described as "fair" or "reasonable" notice. Notice need not emanate solely from the indictment, but may also derive from the bill of particulars and the testimony at trial. The decision of the Ohio Court of Appeals finding that Coles was apprised of the 43 rapes through these three sources was not an unreasonable application of or contrary to Supreme Court precedent. Because of the generalized nature of the standard, a high level of deference must be paid to the state court's determination that Coles received constitutionally sufficient notice. Neither *Valentine* nor *Russell v. United States*, 369 U.S. 749 (1962) provides a basis for relief under the AEDPA standard because *Valentine* is a circuit court decision and *Russell* relies on the Fifth Amendment, applicable only to federal defendants.

This case does not pose double jeopardy concerns. The issue is premature because the state has not attempted to reindict Coles. There is therefore no basis for finding that he is being prosecuted again for the same

offense.   Moreover, there was sufficient evidence to support all 43 counts of rape, suggesting that he was not punished twice for the same offense in the instant prosecution.

In finding that none of the prosecutor's three  comments deprived Coles of a fair trial, although one was arguably improper, the Ohio Court of Appeals reasonably applied the fundamental fairness standard set forth in  in *Darden v. Wainwright*,  477 U.S. 168 (1986).  As in *Darden*, the trial court provided instructions that argument is not evidence.  Also, like Darden's case where the Supreme court described the weight of the evidence as "heavy," 477 U.S. at 182, the state's case here was also strong, supported by unshakable victim testimony.

The prosecutor's comments in this case pale in comparison to the outrageous statements made by the prosecutor in Darden's case---where the Supreme Court declined to find prosecutorial misconduct.   Here, the prosecutor commented on the veracity of the victim, but one of the remarks was proper as it was explicitly based on the consistency of the victim's account. The prosecutor's reference to Coles as an abuser was also based on the evidence properly admitted at trial that Coles physically abused his wife and sexually abused his stepdaughter. This was not an attack on Coles's character, but rather an apt description of his conduct.  In any event, it was no worse than the prosecutor's calling Darden an animal.

The Supreme Court's denial of habeas corpus relief in *Darden*--where the prosecutor's conduct was considerably more severe and sustained--supports

the district court's decision to uphold as reasonable the Ohio Court of Appeals conclusion that Coles was not denied a fair trial due to the prosecutor's three remarks in closing argument. The general nature of the *Darden* fundamental fairness standard—which allows for a substantial range of reasonable applications—lends further support to that decision.

## STANDARD OF REVIEW

"In a habeas case, this Court reviews the district court's legal conclusions *de novo* and its factual determinations for clear error." *McKinney v. Ludwick*, 649 F.3d 484, 487 (6th Cir. 2011), *cert. denied*, 132 S. Ct. 1559 (2012). The more deferential standard of review under the Antiterrorism and Effective Death Penalty Act (AEDPA), codified principally at 28 U.S.C. § 2254, applies to the state court decision. Under the AEDPA standard, the petitioner is not entitled to federal habeas corpus relief, unless the state court's adjudication of his claim resulted in a decision that (1) was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. *See* 28 U.S.C. § 2254(d); *see also Williams v. Taylor,* 529 U.S. 362, 402-03 (2000).

The AEDPA requires federal habeas courts to review state court decisions with "deference and latitude." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011). "A state court's determination that a claim lacks merit precludes habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.* (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). To obtain relief, a petitioner must show that the state court ruling on his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 131 S. Ct. at 787.

**ARGUMENT**

## I.   COLES RECEIVED NOTICE OF THE 43 RAPE COUNTS UNDER THE RELEVANT CONSTITUTIONAL STANDARD.

The Fifth Amendment right to indictment by grand jury does not apply.

As an initial matter, petitioner's contention that his conviction for 43 rapes violated his right to be charged by a grand jury is not cognizable. (*See* R. 1, Petition, Page ID # 23).  Coles does not have such a right under the United States Constitution.  He only has a right to notice of the charges against him. The right to indictment by a grand jury in state court is not guaranteed by the U.S. Constitution.  *Lawwill v. Pineda,* No. 1:08cv2840, 2011 U.S. Dist. LEXIS 52419, at *18 (N.D. Ohio May 16, 2011).  The Fifth Amendment's requirement that criminal defendants be charged by an indictment issued by a grand jury does not apply to the states.  *Apprendi v. New Jersey*, 530 U.S. 466 (2000); *Alexander v. Louisiana,* 405 U.S. 625, 633 (1972) ("[T]he Court has never held that federal concepts of a 'grand jury,' binding on the federal courts under the Fifth Amendment, are obligatory for the States."); *Hurtado v. California,* 110 U.S. 516, 537-538 (1884); *James v. Reese,* 546 F.2d 325, 327-328 (9th Cir. 1976).  Nor is it incorporated into the due process requirements assigned to the states through the Fourteenth Amendment.  *McDonald v. City of Chicago*, 130 S. Ct. 3020, 3034 n. 13 (2010).  "Although defendants in Ohio are guaranteed the right to a grand jury indictment by the Ohio Constitution, this guarantee is not based in federal law, and therefore cannot form the basis for a habeas corpus review under the AEDPA."  *Lawwill*, 2011 U.S. Dist. LEXIS 52419, at

*19.    The district court correctly determined that Coles's "challenge to his conviction under the Fifth Amendment fails because the Fifth Amendment does [not] require that the state court charge him by indictment."  (R. 18, Order, Page ID # 2245).

> The Sixth Amendment right to be informed of the nature and cause of the accusation applies.

On the other hand, the Sixth Amendment does apply in state criminal prosecutions. The Sixth Amendment provides in relevant part: "In all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation."  The Fourteenth Amendment's Due Process Clause incorporates this right to fair notice of criminal charges, which is considered "basic in our system of jurisprudence."  *Watson v. Jago,* 558 F.2d 330, 338 (6th Cir. 1977) (quoting *In re Oliver,* 333 U.S. 257, 273 (1948)).  The Fourteenth Amendment mandates that "whatever charging method the state employs must give the criminal defendant fair notice of the charges against him to permit adequate preparation of his defense."  *Koontz v. Glossa,* 731 F.2d 365, 369 (6th Cir. 1984).

> No principle of procedural due process is more clearly established than that notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge, if desired, are among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal.

*Cole,* 333 U.S. at 201; *see In re Oliver*, 333 U.S. at 273 (A "person's right to reasonable notice of a charge against him" is "basic to our system of jurisprudence.").

The district court set forth the applicable standard as follows:

> The Sixth Amendment, made applicable to the states by way of the Fourteenth Amendment, guarantees all criminal defendants in state prosecutions "to be informed of the nature and cause of the accusation." *Argersinger v. Hamlin,* 407 U.S. 25, 27–28 (1972). The Supreme Court has found that "[n]o principle of procedural due process is more clearly established than that notice of the specific charge, and a chance to be heard in a trial of the issues raised by the charged ... are among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal." *Cole v. [Arkansas],* 333 U.S. 196, 201 (1948). "Notice of issues to be resolved by the adversary process is a fundamental characteristic of fair procedure." *Lankford v. Idaho,* 500 U.S. 110, 126 (1991). Notice is sufficient when it enables the defendant "to identify the issues on which a decision may turn." *Lankford v. Idaho,* 500 U.S. 110, 126 n. 22.

(R. 18, Order, Page ID # 2245-2246).

   The district court summarized the relevant standard as whether criminal defendants are "informed of the nature and cause of the charges, so that they have the opportunity to identify the issues on which the decision may turn, . . . and defend themselves against the charges." (*Id.* at Page ID # 2246 citing *Lankford,* 500 U.S. at 126 n. 22  and *Cole,* 333 U.S. at 201)).

   For the following reasons, the Ohio Court of Appeals concluded that sufficient facts were presented in the proceedings to apprise Coles of the 43 rape charges against him:

> **[*P38]** After a careful review of the record in this case and an analysis of this court's prior decisions citing *Valentine*, we find that there   was sufficient evidence in S.D.'s testimony and other evidence presented at trial that provided discernible facts to substantiate the separate charges.

>  **[*P39]** S.D. was able to recall when, where, and how the abuse occurred.  She testified that the abuse started again in the summer

of 2001 when the family was living on Clifton Avenue in Lakewood. She testified that it was the summer between her seventh and eighth grade. Although she did not remember how it started, she remembered the abuse occurred in the living room or her mother's room. She was able to fully describe the house the family was living in and testified that Coles would wake her up at night when he was drunk and her mother was asleep. She testified that Coles would tell her to come into his room or would wake her up in the middle of the night and tell her to take her clothes off and he would either have his boxer shorts on or he would be naked and he would tell her to have sex with him. She described that he would either get on top of her or make her get on top of him and put his penis in her vagina. She also stated that Coles threatened her and told her that he would hurt her, kill her, break her neck, or hurt her mom if she   told anyone about the abuse. S.D. testified that the abuse happened "probably twice a week" for the year that she was living in Lakewood.

**[*P40]** In June of 2002, when the family moved to Parma with Coles, S.D. testified that the abuse intensified so that she and Coles were having sex "almost every day" and that the abuse would occur in the finished basement, in Coles' bedroom, or in her bedroom. She stated that he made her have sex with him just like he did in Lakewood and that the abuse usually occurred while her mother was at work or at night. Then S.D. became pregnant again in 2004 and Coles threatened her and told her to "blame it on one of [her] guy friends." S.D. had an abortion on April 2, 2004, and remembered the date because it was also her little brother's birthday. S.D. testified that Coles made her start having sex with him one week after the abortion, telling her that she should be healed from the abortion. She then testified that Coles made her have sex "a couple times a week" between April 2 and July 5, 2004, when the family moved to Iowa.

**[*P41]** Although, at one point during the trial, the State asked S.D. to estimate how many times Coles had molested her, we note that the estimation   she gave was only for those crimes for which the jury acquitted Coles. In other words, S.D. "guessed" how many times Coles had molested her between the ages of ten and thirteen, but the jury acquitted him of those charges.

**[*P42]** Thus, S.D. was able to put each incident in a time frame by detailing where it happened and which house she was living in. She was also able to place certain offenses within a particular time frame by tying the offenses to her grade in school. See *State v. Crosky*, Franklin App. No. 06AP-655, 2008 Ohio 145; *State v.*

19

*Lawwill*, Cuyahoga App. No. 88251, 2007 Ohio 2627. And, like *Yaacov*, but unlike the situations in *Valentine* and *Hemphill*, other evidence was presented to substantiate S.D.'s claims. Dawn Coles testified that Coles admitted to her that he and her daughter were "lovers." The medical records substantiated that S.D. had an abortion in April 2004. And the State was able to show that the frequency of rape increased when Dawn was pregnant.

 [*P43]  In this case, the State attempted to set forth the factual basis for each incident of molestation that occurred over a three and one-half-year period. The allegation was that Coles molested his stepdaughter repeatedly for over  three years. The bill of particulars identified the victim, her date of birth, and the places the crimes occurred. The trial court instructed the jurors that each of the charges constitutes a distinct and separate offense, and that they must consider each count separately. *State v. Brady*, Cuyahoga App. No. 87854, 2007 Ohio 1453.

 [*P44]  We also find that the failure to allege specific dates did not prejudice Coles' ability to defend himself because his defense strategy centered on his claim that he never engaged in sexual conduct with S.D., regardless of the date or place she alleged the abuse took place. See *Yaacov; State v. Bennett*, Brown App. No. CA2004-09-028, 2005 Ohio 5898, 1133 (remanded by *In re Ohio Crim. Sentencing Statutes Cases*, 109 Ohio St.3d 313, 2006 Ohio 2109, 847 N.E.2d 1174); *State v. Carnes*, Brown App. No. CA2005-01-001, 2006 Ohio 2134; *State v. Barnecut* (1988), 44 Ohio App.3d 149, 152, 542 N.E.2d 353.

 [*P45]  Thus, we conclude the indictment was properly filed and alleged sufficient facts to apprise Coles of the charges against him.

(R. 7-21, Ex. 15, Ohio Court of Appeals Decision, Page ID # 703-706).

The district court correctly concluded that the state appellate decision finding that Coles was apprised of the charges against him was not contrary to clearly established federal law. (R. 18, Order, Page ID # 2246). The district court upheld the state court's reasoning that the indictment supplied Coles with the time period of the crimes, the bill of particulars identified the victim

and places of the rapes[5] and the trial testimony supported at least 43 rape counts.  *Id.*  To demonstrate the latter, the district court engaged in the following calculations:

> The victim testified that the abuse happened approximately twice a week from approximately June 2001 to June 2002. That would give rise to approximately 104 incidents. The victim also testified that beginning in June 2002, the abuse occurred almost every day. Because no end date is specified, even if one were to accept that "beginning in June 2002" meant "during June 2002," this evidence would give rise to twenty to thirty additional incidents of abuse. There was also testimony from the victim, that from April 2004 to July 2004, the abuse occurred a couple times a week. That would give rise to approximately twenty-four additional incidents. The victim further testified that the abuse continued after July 2004, and she finally told her mother in June 2005. This testimony gives rise to at least one additional incident of abuse, bringing the total incidents of abuse as described by the victim's testimony to approximately 149 incidents. Even if one were to exclude the 2001–2002 incidents, there would be 45 incidents

*Id.*  On this basis, the district court also concluded that the state court decision did not involve an unreasonable determination of the facts.  (*Id.* at Page ID # 2246).

---

[5] Coles's complaint that the Bill of Particulars was not helpful in notifying him of the location of the offenses comes too late.  He complains that it alleged Cleveland as the location for the rapes between 1998 and 2001 and Cleveland and Parma for the later rapes, when S.D. had testified that the rapes occurred in Lakewood and Parma. Petitioner's Brief, p. 37. Any inaccuracy as to the location of the earlier rapes is moot because Coles was acquitted of them. Moreover, the Magistrate Judge declined to consider Coles's argument that the bill of particulars was deficient in omitting the Lakewood location because Coles failed to raise this issue as a ground for relief in the petition. (See R. 14, Report and Recommendation, Page ID # 2070, n. 6). He also failed to identify this concern in his appeal to the Ohio Court of Appeals.  (R. 7-20, Ex.  13, Appellant's Brief, Page ID # 601-606).  Accordingly, even if the issue had been raised as a basis for habeas relief, it would have been considered procedurally defaulted.  In any event, this discrepancy is minor because Lakewood is part of the Greater Cleveland Metropolitan area and is considered one of Cleveland's "inner-ring suburbs." *See* http://en.wikipedia.org/wiki/Lakewood,_Ohio.

<u>Adequacy of notice of the charges may be assessed from the indictment, bill of particulars and trial testimony.</u>

Whether a defendant received constitutionally proper notice of the charges may be assessed by reference to—not only the indictment and bill of particulars—but also the trial testimony.  As the district court correctly noted, to the extent that *Valentine* applies, "*Valentine* permits the court to review the indictment, the bill of particulars, as well as evidence presented at trial to determine whether the notice requirements of due process have been met."[6] (R. 18, Order, Page ID # 2247); *see Freeman v. Tibbals,* No. 1:12cv2557, 2013 WL 4874112, at *4 (N.D. Ohio Sept. 11, 2013) (citing *Cowherd v. Million,* 260 Fed. Appx. 781, 786 (6th Cir. 2008) and *Valentine,*  395 F.3d at 634) ("In fact, the Sixth Circuit has held that a court is permitted to review the indictment, the bill of particulars, and the evidence presented at trial to determine whether any defects in the indictment are cured."); *see also Perry v. Tibbles,* No. 5:12cv802, 2013 WL 4680483, at *19, 22 & n. 4 (N.D. Ohio Aug. 30, 2013); *Egler v. Brunsman*, No. 3:09cv02163, 2010 WL 5463808, at *35 (N. D. Ohio Dec. 29, 2010).   The *Valentine* Court lamented that in Valentine's prosecution the notice problems in the indictment could have been cured had the "prosecution delineated the factual bases for the forty separate incidents either before or during the trial."  *Valentine*, 395 F.3d at 634.

---

[6] The Magistrate Judge agreed, acknowledging that "*Valentine* seems to indicate that trial testimony differentiating one count from another, otherwise-indistinguishable count may constitute "notice" within the meaning of the Constitution."  (R. 14,Report & Recommendation, Page ID # 2069).

"The Ninth Circuit has [also] recognized that a defendant may receive constitutionally adequate notice of an underlying charge by means other than the charging document." *Carmona v. Johnson*, No. CV 12-7616 GAF (FFM), 2013 WL 2456619, at *5 (C.D. Ca. June 5, 2013); *see, e.g., Calderon v. Prunty,* 59 F.3d 1005, 1009 (9th Cir.1995) (defendant can be put on sufficient notice of the charges against him by the charging document, a bill of particulars, or testimony at trial); *Morrison v. Estelle,* 981 F.2d 425, 427–49 (9th Cir. 1992) (noting that defendant may receive adequate notice of charges during trial through presentation of evidence and jury instructions).  *But see Gautt v. Lewis*, 489 F.3d 993, 1002 (9th Cir. 2007).

Since it does not appear that the Supreme Court has addressed the question of whether a non-charging source may serve as a contributing factor to the constitutional notice requirement, the state appellate court's reliance on the trial testimony and bill of particulars cannot be considered at odds with clearly established Supreme Court precedent.

Coles does not have an alibi defense.

 The state court found "that the failure to allege specific dates did not prejudice Coles's ability to defend himself because his defense strategy centered on his claim that he never engaged in sexual conduct with S.D., regardless of the date or place she alleged the abuse took place." (R. 7-21, Ex. 15, Ohio Court of Appeals Decision, Page ID # 705).  The district court concluded that this determination was "not unreasonable in light of the evidence presented in the state court proceedings." (R. 18, Order, Page ID #

2247).  Coles was not hampered in his ability to prepare a defense by the broad and identical timeframes charged for each count because he did not raise an alibi defense, but rather simply denied committing rape.  S*ee Thompson v. Bradshaw,* No. 1:04CV2204, 2007 U.S. Dist. LEXIS 51203, at *43 (N.D. Ohio July 16, 2007) (lack of specific dates on three rape charges did not constitute denial of due process where defendant failed to establish that precise date was material to defense).

In his appellate brief, Coles argued that the broad timeframes and the the State's amendment to limit the time in 1998 and 2000 after the witness testified made any potential alibi defense difficult.  Petitioner's Brief, p. 35. . Coles failed to raise the latter argument in his state appellate brief and in any event, it related to offenses occurring during time periods for which he was acquitted.  If the State had amended the indictment to conform to the evidence during the relevant time periods (January 2001 through July 2004) and Coles had a legitimate alibi defense, he could have sought a continuance.  As it stands, Coles's argument relating to an alibi defense is completely speculative. There is no evidence either in the record or proffered by him that he had an alibi.

Notice of the offending conduct and the identity of the victim were sufficient for Coles to mount his defense denying abuse.  *See Lawwill,* 2011 U.S. Dist. LEXIS 52419, at *25.  Coles has not identified any other information that he needed in order to prepare a defense nor has he indicated that his

defense would have changed had he been provided additional distinguishing facts. *See id.*

<u>The trial testimony provided additional notice of the rape charges.</u>

S.D. provided concrete testimony of actual multiple rapes perpetrated by Coles sufficient to meet constitutional standards of notice. However, Coles contends, that he received inadequate notice of the 43 rapes from the victim's testimony because she only estimated the number of rapes occurring weekly or daily and referred to typical or generic abuse scenarios, providing little detail or specificity. The Ohio Court of Appeals' summary of S.D.'s testimony during the relevant time period—which is entitled to a presumption of correctness under 28 U.S.C. § 2254 (e)--belies his perceptions:

[*P39] S.D. was able to recall when, where, and how the abuse occurred. She testified that the abuse started again in the summer of 2001 when the family was living on Clifton Avenue in Lakewood. She testified that it was the summer between her seventh and eighth grade. Although she did not remember how it started, she remembered the abuse occurred in the living room or her mother's room. She was able to fully describe the house the family was living in and testified that Coles would wake her up at night when he was drunk and her mother was asleep. She testified that Coles would tell her to come into his room or would wake her up in the middle of the night and tell her to take her clothes off and he would either have his boxer shorts on or he would be naked and he would tell her to have sex with him. She described that he would either get on top of her or make her get on top of him and put his penis in her vagina. She also stated that Coles threatened her and told her that he would hurt her, kill her, break her neck, or hurt her mom if she told anyone about the abuse. S.D. testified that the abuse happened "probably twice a week" for the year that she was living in Lakewood.

[*P40] In June of 2002, when the family moved to Parma with Coles, S.D. testified that the abuse intensified so that she and Coles were having sex "almost every day" and that the abuse would occur in the finished basement, in Coles' bedroom, or in her

bedroom. She stated that he made her have sex with him just like he did in Lakewood and that the abuse usually occurred while her mother was at work or at night. Then S.D. became pregnant again in 2004 and Coles threatened her and told her to "blame it on one of [her] guy friends." S.D. had an abortion on April 2, 2004, and remembered the date because it was also her little brother's birthday. S.D. testified that Coles made her start having sex with him one week after the abortion, telling her that she should be healed from the abortion. She then testified that Coles made her have sex "a couple times a week" between April 2 and July 5, 2004, when the family moved to Iowa.

 **[\*P41]**  Although, at one point during the trial, the State asked S.D. to estimate how many times Coles had molested her, we note that the estimation   she gave was only for those crimes for which the jury acquitted Coles. In other words, S.D. "guessed" how many times Coles had molested her between the ages of ten and thirteen, but the jury acquitted him of those charges.

(R. 7-21, Ex. 15, Ohio Court of Appeals Decision, p. 17-18 Page ID # 703-704).

S.D. did not guess or speculate that Coles raped her.  She recounted actual incidents of rape.  Moreover, the Warden is perplexed at the notion that her testimony lacked detail.  She testified to forcible vaginal rape in either a missionary position or with her on top.  What additional details does petitioner want? Also, respondent is unaware of any evidentiary or constitutional rule which would require the victim to repeat this description 43 times, as opposed to testifying to the frequency with which the criminal conduct occurred *See Yaacov v. Hudson*, No. 1:08CV0507, 2009 U.S. Dist. LEXIS 126899, at *25-26 (N.D. Ohio Oct. 7, 2009)  (Testimony that perpetrator molested victim "at least once a week and on weekends" and "once a week for three months" was sufficient to support 40 instances of sex-related offenses).

Contrary to petitioner's allegation, there is no evidence on the record that these were estimates, as opposed to precise rates of abuse. The victim testified that when she moved to Parma in June 2002, the sexual abuse occurred "almost every day."[7]  (R. 7-23, Vol. I, Trial Transcript, Page ID # 1078).  She specified that between March and July 2004, the abuse occurred "a couple of times a week."[8]  (*Id.* at Page ID # 1088).  S.D. was less definite about the frequency of abuse in 2001 in Lakewood which she described as "probably twice a week," despite the prosecutor's best efforts to pin her down.[9] (*Id.* at Page ID # 1075).  As the appellate court determined (R. 7-21, Ex. 15, Ohio Court of Appeals Decision,  Page ID # 704), the only time the victim was asked to estimate the frequency of the abuse pertained to counts that were dismissed. (See R. 7-24, Vol. II, Trial Transcript, Page ID # 1106).  Otherwise she testified to the actual frequency of the sexual assaults.

---

[7]The prosecutor asked:  "And how often did it happen while you were living in Parma?"  S.D. responded "Almost every day." (R. 7-23, Vol. I, Trial Transcript, Page ID # 1078).  She was neither asked to provide an estimate nor did she answer the prosecutor's question with one.

[8] The prosecutor asked:  "And how often did this occur in Parma between March 2, 2004 and July 5, 2004?"  S.D. responded:  "A couple times a week." (*Id.* at Page ID # 1088). Again, the prosecution neither sought an approximation nor did S.D. provide one.

[9] The prosecutor inquired:  "how often did this happen?  Would it happen – while you were living on Clifton was this a weekly basis?  Less than weekly, more than weekly?  Monthly?  How often would it happen?"  She said: "probably twice a week."  The prosecutor followed up with "[w]hen you say probably twice a week, you mean – I know I am asking a lot of you, but is that -- would it always be twice a week?"  She answered:  "It happened  a lot." (*Id.* at Page ID # 1075).

<u>Neither *Valentine* nor *Russell* constitute the relevant, clearly established federal law for AEDPA review.</u>

In *Renico v. Lett,* 130 S. Ct. 1855, 1864, 1866 (2010), the Supreme Court held that the federal court on habeas corpus review may not rely on federal circuit court decisions, including the circuit's own precedents, in determining "clearly established federal law" and that such reliance constitutes error. Nor can the federal court consider the circuit court's decisions to merely "illuminate" Supreme Court precedent when the Supreme Court's caselaw does not involve the factors cited in the circuit's opinions. *Id.*

Based on *Renico v. Lett*, the district court properly concluded that *Valentine*, a circuit court decision, was not the clearly established federal precedent guiding AEDPA review. (R. 18, Order, Page ID # 2241). The Supreme Court has more recently reaffirmed the requirement that AEDPA review be limited to Supreme Court precedent. In *Parker v. Mathews*, 132 S. Ct. 2148, 2155 (2012), the Supreme Court reiterated: "[C]ircuit precedent does not constitute "clearly established Federal law, as determined by the Supreme Court." The Court concluded: "It therefore cannot form the basis for habeas relief under AEDPA." *Id.* In finding *Valentine* inapplicable, the district court properly followed Supreme Court precedent. *See Lawwill*, 2011 U.S. Dist. LEXIS 52419, at *5-9 (reliance on *Valentine* considered error under *Lett*); *Rogers v. Mississippi*, No. 3:07cv600TSL-FKB, 2011 U.S. Dist. LEXIS 90870, at *34, n. 8 (S.D. Miss. Feb. 18, 2011) (noting as "apparent" that *Valentine* was not clearly established Supreme Court law and therefore could not factor into

28

the court's review under § 2254(d)), *adopted in part*, 2011 U.S. Dist. LEXIS 90867 (S.D. Miss. Aug. 15, 2011).

The district court also correctly declined to apply *Russell v. United* States, 369 U.S. 749 (1962), one of the Supreme Court cases "driving the analysis in *Valentine*." (R. 18, Order, Page ID # 2241). In distinguishing that decision, the district court explained that *Russell* involved the "sufficiency of a federal indictment, examined under the Fifth Amendment, which is not implicated in this court's habeas review of a state court proceeding, as the Constitution does not require states to charge by indictment." (*Id.*). *See Alexander v. Louisiana*, 405 U.S. at 633 ("[T]he Court has never held that federal concepts of a 'grand jury,' binding on the federal courts under the Fifth Amendment, are obligatory for the States."); *see Hurtado*, 110 U.S. at 537-538; *James*, 546 F.2d at 327-32. Since *Russell* relied on the Fifth Amendment right to a grand jury inapplicable to state indictments and the facts do not remotely relate to a case such as this involving a multi-count prosecution for child sexual abuse, *Russell* cannot be considered to create clearly established federal law for purposes of this case. *See Lawwill*, 2011 U.S. Dist. LEXIS 52419, at *19-22. Instead, the relevant federal law is "Supreme Court precedent examining the Sixth Amendment's guarantee that in all criminal prosecution, defendants must be informed of the nature and cause of the accusation." (R. 18, Order, Page ID # 2241-2241).

<u>The generality of the notice standard requires greater deference to the state court's application.</u>

The district court summarized the relevant standard as whether criminal defendants are "informed of the nature and cause of the charges, so that they

have the opportunity to identify the issues on which the decision may turn, . . . and defend themselves against the charges."   (*Id.* at Page ID # 2246). The constitution does not require "perfect" notice or even detailed notice.  *See Mira v. Marshall*, 806 F.2d 636, 639 (6th Cir. 1986) (An "indictment which fairly but imperfectly informs the accused of the offense for which he is to be tried does not give rise to a constitutional issue cognizable in habeas proceedings."); *Blake v. Morford,* 563 F.2d 248, 250 (6th Cir. 1977).

The more general the standard or rule under consideration, the more the standard allows for a substantial range of reasonable applications.  *Richter,* 131 S. Ct. at 786, 788; *see Bray v. Andrews*, 640 F.3d 731, 738 (6th Cir. 2011).  In a case in which a general principle is considered, the state has more leeway to apply it on a case-by-case basis.   *Lett,* 130 S. Ct. at 1864.  The Supreme Court cautioned:  "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Richter*, 131 S. Ct. at 786.  Also, if a rule is not "squarely established" by the United States Supreme Court, the state court may not be faulted for declining to apply it.  *Id.*

The state court's conclusion that Coles was properly apprised of the charges against him is not an unreasonable application of the principles of "fair" or "reasonable" notice laid out in the Supreme Court's precedents. Because the principles of "fair" or "reasonable" notice sufficient to mount a defense or identify the decisive issues are general, the Ohio Court of Appeals had significant  leeway in applying them  to this case.  *See, e.g., Richter,* 131 S.

Ct. at 786, 788; *cf. Lett,* 130 S. Ct. at 1865 (whether the judge exercised sound discretion is a general standard "to which there is no plainly correct or incorrect answer."). Since the standard is general, the state court decision should be given a "particularly generous benefit of the doubt." *Watson v. Greene,* 640 F.3d 501, 508 (2nd Cir.), *cert. denied,* 132 S. Ct. 335 (2011). Moreover, there is no constitutional basis for discounting testimony from the victim that she was abused multiple times in assessing whether a defendant received fair notice of the charges. In this case, the indictment together with the testimony at trial fully notified the defendant that he was being charged with 43 counts of rape.

As Judge Gilman noted in the *Valentine* dissent, "no Supreme Court case has ever found the use of identically worded and factually indistinguishable indictments *unconstitutional.*" *Valentine,* 395 F.3d at 639. He observed that the majority cited "no authority" to support its conclusion that that the use of multiple identical counts failed to sufficiently apprise a defendant of the charges he faced. *Id.* Judge Gilman further disputed the majority's view of evidence of the victim's estimates of how many times she was assaulted as unreliable, suggesting that the court's characterization invades the province of the jury to weigh and consider all the evidence. *Id.* at 641.

In light of the broad principles of fair notice under the Due Process Clause and Sixth Amendment and the lack of Supreme Court law even remotely on point—involving identically worded multi-count indictments in state prosecutions--petitioner has failed to demonstrate that the Ohio Court of

Appeals decision finding that petitioner received constitutionally appropriate notice was contrary to or involved an unreasonable application of clearly established Supreme Court precedent.  Coles has not met his burden of showing that the state court's ruling "was so lacking in justification that there was an  error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *See Richter*, 131 S. Ct. at 787.  The Court of Appeals' reliance on the indictment, bill of particulars, and the victim's testimony that she was raped repeatedly as a foundation for its conclusion that Coles was adequately apprised of all the charges does not constitute an error of that magnitude—or for that matter any error at all under relevant Supreme Court caselaw.

     <u>Double jeopardy concerns are not currently implicated.</u>

Concluding that "a violation of the double jeopardy clause is not implicated at this time," the district court explained that there was sufficient evidence to support each of the 43 rape counts and the state had not reindicted Coles for those same rapes.  (R. 18, Order, Page ID # 2248).  The Fifth Amendment  provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb."  U.S. Const. amend. V.  The guarantee against double jeopardy, made applicable to the states through the Fourteenth Amendment, *Benton v. Maryland,* 395 U.S. 784, 794 (1969), protects against "a second prosecution for the same offense after conviction or acquittal." *Palazzolo v. Gorcyca,* 244 F.3d 512, 516 (6th Cir. 2001) (citing *Ohio v. Johnson,* 467 U.S. 493, 498 (1984)).  The Double Jeopardy Clause also protects against "multiple

punishments for the same offense" imposed in a single proceeding. *Missouri v. Hunter,* 459 U.S. 359, 366 (1983).

The district court explained that in evaluating a double jeopardy claim, the court must compare the facts in the second indictment to those in the first indictment to see whether the prosecutions are for the same offense. (R. 18, Order, Page ID # 2248). *See Mitchell v. Forsyth,* 472 U.S. 511, 538 (1985); *Lawwill,* 2011 U.S. Dist. LEXIS 52419, at *24. As the district court observed, "[h]ere Petiole is not being convicted for the same crime twice or being punished multiple times for the same criminal offense." (R. 18, Order, Page ID # 2248). The government has not filed a second indictment charging Coles with the same offense and has no intention of retrying him for rapes committed against S.D. *See Jackson v. Whetsel,* 388 Fed. Appx. 795, 801-802 (10th Cir. 2010) (observing that without a specific charging document to review, the double jeopardy analysis would be "necessarily hypothetical"); *Lawwill,* 2011 U.S. Dist. LEXIS 52419, at *23-24. Moreover, the district court reiterated that the Ohio Court of Appeals reasonably found sufficient evidence to support each rape, implying that Coles was not punished twice for the same rape count in the instant prosecution.[10]

---

[10] In *Valentine*, petitioner's convictions for 20 offenses, when the evidence only supported 15, led the court to conclude that Valentine was "likely subject[] to double jeopardy in his initial trial." *Valentine*, 395 F.2d at 636; *see Lawwill,* 2011 U.S. Dist. LEXIS 52419, at *15-16. This issue does not exist in this case because there was sufficient evidence to support all 43 rape convictions. *Cf. Lawwill,* 2011 U.S. Dist. LEXIS 52419, at *15-16.

As further support for its conclusion, the district court noted the absence of clearly established Supreme Court law that on due process grounds, invalidates indictments charging multiple violations of the same criminal statute during the same extended time period or that would "require a court to vacate an otherwise valid conviction because a double jeopardy issue may arise in the future." (R. 18, Order Page ID # 2248-2249). *See Lawwill*, 2011 U.S. Dist. LEXIS 52419, at *22-23

Coles is not entitled to relief under the AEDPA on double jeopardy grounds because his claim is not ripe for review and he fails to identify any relevant, clearly established Supreme Court law which calls for the vacating of his convictions on this basis.[11]

## II.    THE PROSECUTOR'S COMMENTS IN CLOSING ARGUMENT DID NOT RENDER COLES'S TRIAL FUNDAMENTALLY UNFAIR.

The clearly established federal law relevant to Coles's prosecutorial misconduct claims is found in *Darden v. Wainwright*, 477 U.S. 163 (1986). *See Parker*, 132 S. Ct. at 2153. In that case, the Supreme Court held that a

---

[11] Although Coles alleged that the indictment failed to protect him against double jeopardy in the heading of his argument, Petitioner's Brief, p. 24, he fails entirely to support his assertion. He briefly refers to the double jeopardy issue in describing the *Valentine* and *Russell* cases, *id.* at p. 32, but otherwise fails to elaborate on its application to Coles's situation. "This court is not obligated to consider unsupported arguments inadequately developed in the briefs." *See United States v. Clark,* 1991 U.S. App. LEXIS 6681, at *17 (6th Cir. 1991). Since Coles has failed to develop or support his double jeopardy argument in his initial brief, it should be considered waived on this appeal. *See United States v. Williams*, 544 F.3d 683, 690 (6th Cir. 2008); *Robert N. Clemens Trust v. Morgan Stanley DW, Inc.*, 485 F.3d 840, 852 (6th Cir. 2007).

prosecutor's improper comments violate the constitution only if they "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden*, 477 U.S. at 181 (quoting *Donnelly v. DeChristoforo,* 416 U.S. 637, 643 (1974)). "[T]here can be no such thing as an error-free, perfect trial, and . . . the Constitution does not guarantee such a trial." *United States v. Hasting*, 461 U.S. 499, 508-09 (1983). "Even if the prosecutor's conduct was 'undesirable or even universally condemned,' this Court can only provide relief if the [conduct was] so egregious as to render the entire trial fundamentally unfair to a degree tantamount to a due process violation." *Darden,* 477 U.S. at 181. The reviewing court's focus in a claim of prosecutorial misconduct is "the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). A prosecutor's alleged misconduct must be examined within the context of the entire trial to determine whether it deprived a defendant of a fair trial. *United States v. Young*, 470 U.S. 1, 11-12 (1985). The Supreme Court has "defined the category of infractions that violate 'fundamental fairness' very narrowly." *Dowling v. United States*, 493 U.S. 342, 352 (1990).

Because the *Darden* standard is so general, it provides courts with "more leeway . . . in reaching outcomes in case-by-case determinations." *Parker*, 132 S. Ct. at 2155 (quoting *Yarborough*, 541 U.S. at 664). Moreover, a general standard--such as *Darden*'s fundamental fairness test--allows for a substantial range of reasonable applications by the state courts. *See Richter*, 131 S. Ct. at 786, 788.

In *Darden*, the Supreme Court held that a closing argument that contained "a series of inflammatory remarks did not warrant issuance of a writ." *See Blackmon v. Booker*, 696 F.3d 536, 558 (6th Cir. 2012), *cert. denied*, 133 S. Ct. 1501 (2013). The United States Supreme Court declined to find a due process violation when the prosecutor made improper comments in his closing argument including calling the defendant an animal, implying that the death penalty was the only guarantee against defendant's future acts, blaming the Division of Corrections because defendant was on a weekend furlough when the crime occurred and making offensive comments reflecting an emotional reaction to the heinous facts of the case.[12]  *Darden,* 477 U.S. at 179-180.  The Supreme Court was persuaded that petitioner's trial was a fair one because the prosecutor's argument did not manipulate or misstate the evidence, the prosecutor's comments were responsive to the opening summation of the defense, the court gave an instruction that the jury's

---

[12] The series of comments included, for example: "He shouldn't be out of his cell unless he has  a leash on him and a prison guard at the other end of that leash."  "I wish [Mr. Turner] had had a shotgun in his hand when he walked in the back door and blown his [Darden's ] face off.  I wish that I could see him sitting here with no face, blown away by a shotgun."  "I wish someone had walked in the back door and blown his head off at that point." " He fired on the boy's back, number five, saving one.  Didn't get a chance to use it.  I wish he had used it on himself."  "I wish he had been killed in the accident, but he wasn't.  Again we are unlucky that time."  "[D]on't forget what he has done according to those witnesses, to make every attempt to change his appearance from September the 8th, 1973.  The hair, the goatee, even the mustache and the weight.  The only thing he hasn't done that I know of is cut his throat." *Darden*, 477 U.S. at 181 n. 12.  And there were more: "I will ask you to advise the Court to give him death.  That's the only way that I know that he is not going to get out on the public.  It's the only way I know.  It's the only way I can be sure of it.  It's the only way that anybody can be sure of it now, because the people that turned him loose . . ." *See* 477 U.S. at 181 n. 10.

decision was to be made on the basis of the evidence alone and  not on counsel's argument, the weight of the evidence against petitioner was heavy and the defense counsel had an opportunity to rebut the prosecution's improper arguments and did so effectively.  477 U.S. at 181-182.

The closing argument in Coles's case was far less **inflammatory** than the vitriolic argument in *Darden*.  *See* n. 12, *supra*. Additionally, many of the factors persuading the Supreme Court that Darden's trial was fundamentally fair were present in Coles's case.  These included a cautionary instruction, strong evidence of guilt and the absence of misstatement or manipulation of the evidence.

The Ohio Court of Appeals concluded that the prosecutor's comments on the victim's veracity and his description of Coles as an "abuser" did not prejudice Coles or deny him a fair trial for the following reasons:

> {¶ 65} Coles argues that when the prosecutor told the jury, "I can't imagine a victim or witness in any case that would be more credible or believable than [S.D.] was in this case" and "[S.D.] did not waiver from what she said before. She told the truth. You could see the demeanor * * * " unfairly prejudiced him because the State was vouching for S.D.'s truthfulness. Coles also complains that the prosecutor attacked his credibility by calling him an abuser.

> {¶ 66} The State is permitted to comment on the testimony of witnesses and the evidence, and may suggest a logical conclusion that can be drawn therefrom. *State v. Thompson* (1993), 87 Ohio App.3d 570, 582, 622 N.E.2d 735. The prosecutor may comment on the testimony of the witnesses, including the defendant, and suggest the conclusions to be drawn therefrom. *State v. Draughn* (1992), 76 Ohio App.3d 664, 670, 602 N.E.2d 790. Even though the prosecutor improperly expressed his personal opinion during closing argument, he was arguably commenting on what the evidence showed. The prosecutor was not averring to his personal knowledge, but he was using the statements to enforce what the

evidence and testimony revealed. See *State v. Williams,* Cuyahoga App. No. 87320, 2006–Ohio–4768. And, in this case, the court cautioned the prosecutor and told the jury to disregard the prosecutor's statements.

\*\*\*

{¶ 68} We also find that the overwhelming evidence of guilt renders this alleged error harmless. The trial court instructed the jury that it must decide the case on the evidence and that opening statements and closing arguments were not evidence. We presume that the jury followed the court's instructions. *State v. Loza,* 71 Ohio St.3d 61, 79, 1994–Ohio–409, 641 N.E.2d 1082.

{¶ 69} Therefore, we find that the prosecutor's statements during cross-examination and closing argument did not prejudice Coles and deny him a fair trial. We cannot say, and Coles has not demonstrated, that absent the prosecutor's statements, the outcome of the trial would have been different.

(R. 7-21, Ex. 15, Ohio Court of Appeals Decision, Page ID # 713-714).

The first comment at issue concerning the victim's veracity was made by the prosecutor in his initial closing argument and was met by an objection which the court sustained. (R. 7-26, Trial Transcript, Vol. IV, Page ID # 1709-1711). The second comment at issue referencing the victim's credibility was offered by the prosecutor during the rebuttal portion of closing argument, and was also met by an objection which the court overruled. (*Id.* at Page ID #1771).

The trial court instructed the jury before closing argument began that closing argument is not to be considered evidence (*id.* at Page ID # 1708) and reiterated that instruction as part of his charge to the jury (*id.* at Page ID # 1790). Moreover, the prosecutor's comments were mitigated by the prosecutor's and the court's insistence that it was the jury's responsibility to evaluate the credibility of the witnesses. (*Id.* at Page ID # 1777-1778, 1828,

1833-1834).  As the Ohio Court of Appeals determined, the jury is generally presumed to follow the instructions of the court.  *See Greer v. Miller,* 483 U.S. 756, 767 n. 8 (1987).

A prosecutor may not express his or her own personal opinions as to a witness's credibility.  *See Young*, 470 U.S. at 9-10;  *Hodge v. Hurley*, 426 F.3d 368, 378 (6th Cir. 2005). Such statements are impermissible because they may convey the impression that the prosecutor has evidence of defendant's guilt outside of the record and because the prosecutor's opinion carries the imprimatur of the Government and may induce the jury to rely on the Government's judgment rather than its own.  *Young*, 470 U.S. at 18-19; *Cristini v. McKee*, 526 F.3d 888, 901 (6th Cir. 2008).   However, as the Ohio Court of Appeals explained, a prosecutor may argue from the facts that a witness is (or is not) worthy of belief.  *See Dobek v. Berghuis,* No. 2:08-CV-13968, 2011 U.S. Dist. LEXIS 18551, at *19 (E.D. Mich. February 25, 2011), *aff'd*, 474 Fed. Appx. 447 (6th Cir. 2012).

The prosecutor based his second remark on S.D.'s truthfulness on the fact that she stuck to her account of Coles's sexual abuse.   He pointed to her demeanor as further support of her veracity. (R. 7-26, Trial Transcript, Vol. IV, Page ID # 1771). Because he based his credibility assessment of S.D. on the evidence of record—not on his personal opinion of his witness—the remark was proper.

The prosecutor's remarks as to S.D.'s credibility were isolated in that they were limited to closing argument.  *See Gillard v. Mitchell,* 445 F.3d 883,

898 (6th Cir. 2006) (and cases cited therein).  The majority of the closing argument simply recounted the evidence admitted.  Although petitioner cites two additional instances where the prosecutor referred to the victim's truthfulness, Petitioner's Brief, p. 47-48, Coles did not object to these remarks at trial, did not raise them in his argument on appeal to the Ohio Court of Appeals and failed to include them in his petition and supporting statement as a basis for habeas corpus relief.  (See R. 7-26, Trial Transcript, Vol. IV, Page ID # 1726-1727, 1735; R. 7-20, Ex. 13, Appellant's Brief, Page ID # 617-618; R. 1, Petition, Page ID # 29).  Any prosecutorial misconduct claim based on these additional comments was procedurally defaulted in the state court, *see, e.g., O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 847-848 (1999), and not properly preserved in the federal district court for appeal on habeas corpus review, *see St. Mary's Foundry, Inc. v. Employers Insurance of Wausau,* 332 F.3d 989, 996 (6th Cir. 2003).

The prosecutor's reference to petitioner as an abuser  (R. 7-26, Trial Transcript, Vol. IV, Page ID# 1774), was based on evidence admitted at trial that petitioner sexually abused his stepdaughter and beat his wife. The Ohio Court of Appeals determined that the evidence of domestic violence was properly admitted and accordingly, the prosecutor was permitted to comment on it. (R. 7-21, Ex. 15, Ohio Court of Appeals Decision, Page ID # 706-710). Therefore, the prosecutor's description of Coles as an abuser did not misstate or manipulate the evidence.  Contrary to petitioner's claim, Petitioner's Brief, p. 39-40, the comment was not an attack on the defendant's character, but rather

a concise description of Coles's conduct.  Just as an individual who murders another can fairly be described as a murderer, a person who sexually and physically abuses others, can reasonably be considered an abuser. *See Kappos v. Hanks,* 54 F.3d 365, 367–68 (7th Cir.1995) (petitioner not denied a fair trial where prosecutor referred to him as a "murderer"); *United States v. Pungitore,* 910 F.2d 1084, 1127 (3d Cir.1990) (finding no prosecutorial misconduct in the prosecutor's reference to the appellant as a "cold-blooded murderer" because this was a "fair comment on the evidence adduced at trial").  In any event a single disparaging remark about a defendant is insufficient to deprive him of a fair trial.  *Cf. Darden*, 477 U.S. at 180, 183 (calling defendant an "animal" insufficient to render the trial unfair).

Since the comment was isolated, not objected to by defense counsel and any possible prejudice was mitigated by the court's instructions to the jurors to limit their decision to the evidence and not rely on the arguments of counsel, the prosecutor's remark did not deprive Coles of a fair trial.

Finally, as an additional factor in ensuring the fairness of the trial, the Ohio Court of Appeals pointed to the "overwhelming evidence of guilt."  (R. 7-21, Ex. 15, Ohio Court of Appeals Decision, Page ID # 714).  The strength of the evidence reduced the likelihood that the jury's decision would rest on counsel's argument.  *See Darden*, 477 U.S. at 182.  The victim testified with great specificity to a long history of abuse and parts of her account were corroborated by doctors and social workers (R. 7-24, Trial Transcript, Vol. II,

Page ID # 1169, 1302, 1313), and by the defendant's admission to her mother that he and S.D. were lovers. (R. 7-25, Trial Transcript, Vol. III, Page ID # 1400),

In *Darden*, the Supreme Court relied on the trial court's instruction that the jurors' "decision was to be made on the basis of the evidence alone, and that the arguments of counsel were not evidence" as one of the reasons that Darden's trial was fundamentally fair. *Darden*, 477 U.S. at 182-183. Here, the possibility of prejudice was mitigated by both the prosecutor's and the court's admonitions on the limited role of counsel's argument and the importance of relying on the evidence.

Like Darden's case, the evidence against Coles was strong, "reducing the likelihood that the jury's decision was influenced by argument" *See Darden*, 477 U.S. at 182. The Supreme Court described the weight of the evidence against Darden as "heavy," including "overwhelming eyewitness and circumstantial evidence." *Id.* The state's case here was also strong, supported by unshakable victim testimony. This Court has observed that "the Constitution does not require anything more than a credible eyewitness." *Tucker v. Palmer*, 541 F.3d 652, 659 (6th Cir. 2008) (and cases cited therein). This circuit "has long held that the testimony of the victim alone is constitutionally sufficient to sustain a conviction." *Id.* at 658.

That the jury independently assessed the evidence, without the undue influence of the prosecutor, was evident from their willingness to acquit Coles of many of the charges.

The Ohio Court of Appeals concluded that the prosecutor's "closing argument did not prejudice Coles and deny him a fair trial." (R. 7-21, Ex. 15, Ohio Court of Appeals Decision, Page ID #714). The district court agreed with the state court's assessment, finding that it was not contrary to or an objectively unreasonable application of clearly established Supreme Court law. (R. 18, Order, Page ID #2255).    Considering the cautionary instructions provided and the strength of the evidence (both factors cited by the state court), it was not objectively unreasonable for the Ohio Court of Appeals to conclude that the prosecutor's remarks did not compromise the fairness of Coles's trial.   Additionally, the remarks did not misstate the evidence, two were arguably proper, and the allegedly offending comments were few.  The general nature of the *Darden* fundamental fairness standard—which allows for a substantial range of reasonable applications--and the Supreme Court's denial of habeas corpus relief in *Darden*--where the prosecutor's conduct was considerably more egregious--support the district court's decision to uphold as reasonable the Ohio Court of Appeals' resolution of this claim.   *See Blackmon*, 696 F.3d at 558.

Coles has not demonstrated that the state court's decision involves an unreasonable application of *Darden's* fundamental fairness test or an unreasonable assessment of the facts.  He has not met his burden of showing that the state court decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility

for fairminded disagreement." *Richter*, 131 S. Ct. at 787; see *Blackmon*, 696 F.3d at 558.

Coles's analysis of his prosecutorial misconduct claims is flawed because he relies on cases which employ the two-part/four factor test established by this circuit and generally urges this court to rely on circuit precedent in assessing the reasonableness of the state court decision.[13]   (Petitioner's Brief, p. 46, 49).    The multi-step test employed by the Sixth Circuit "has no application on collateral review of a state court conviction under § 2254(d)(1)." *Blackmon*, 696 F.3d at 557 (citing *Parker*, 132 S. Ct. at 2155).  As the Supreme Court explained:

> [C]ircuit precedent does not constitute "clearly established Federal law, as determined by the Supreme Court," 28 U.S.C. §2254(d)(1). It therefore cannot form the basis for habeas relief under AEDPA. Nor can the Sixth Circuit's reliance on its own precedents be defended in this case on the ground that they merely reflect what has been "clearly established" by our cases. The highly generalized standard for evaluating claims of prosecutorial misconduct set forth in *Darden* bears scant resemblance to the elaborate, multistep test employed by the Sixth Circuit here.

*Parker,* 132 S. Ct. at 2155; *see Lett*, 130 S. Ct. at 1865-66.    In assessing the reasonableness of the state court decision under the AEDPA, this Court may not consult its own precedent.  *See Parker,* 132 S. Ct. at 2155.  The *Parker*

---

[13] In assessing the reasonableness of the state court decision, petitioner urges the court to rely on *United States v. Carroll*, 26 F.3d 1380 (6th Cir. 1994) which employed the circuit's multi-step standard.  (*See* Petitioner's Brief, p. 49).  Coles also cites *Eberhardt v. Bordenkircher*, 605 F.2d 275 (6th Cir. 1979) for the proposition that the strength of the evidence is insufficient to overcome a prosecutor's improper remark.  (See Petitioner's Brief, p. 46).  However, the Supreme Court in *Darden* considered the strength of the evidence an important factor in determining whether the prosecutor's remarks deprived Darden of a fair trial.  *See Darden*, 477 U.S. at 182.

court specifically criticized the Sixth's Circuit's comparison of the prosecutor's comments in Parker's case with those in a prior circuit court decision which held the comments unconstitutional.  *Id.*

To merit habeas corpus relief, the state court decision must involve an unreasonable application of Supreme Court precedent.  *Darden* is the standard here – not circuit court cases.  As the Supreme Court emphasized in *Parker*, it would be "plain and repetitive error" to rely on circuit court precedent in granting a petitioner habeas relief.  *Id.*

## **CONCLUSION**

This Court should affirm the District Court's decision denying habeas corpus relief.

Respectfully submitted,

MICHAEL DEWINE
Ohio Attorney General

s/Hilda Rosenberg
HILDA ROSENBERG (0043814)
Assistant Attorney General
Criminal Justice Section
441 Vine Street
1600 Carew Tower
Cincinnati, Ohio 45202
513) 852-1564
(513) 852-3484 (Fax)
hilda.rosenberg@ohioattorneygeneral.gov

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Fed. R. App. P. 32(a)(7)(B), I hereby certify that this Brief contains 12,588 words, excluding the parts of the Brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), as determined by the word-processing system used to prepare this Brief.  The Brief complies with the type-volume limitation of the Federal Rules of Appellate Procedure.


s/Hilda Rosenberg
HILDA ROSENBERG
Assistant Attorney General


## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was filed electronically on December 23, 2013.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.


s/Hilda Rosenberg
HILDA ROSENBERG
Assistant Attorney General

**ADDENDUM**

**CASE NO. 13-3280**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**JOSEPH COLES,**
**Petitioner-Appellant,**

**v.**

**KEITH SMITH, WARDEN,**
**Respondent-Appellee.**

---

**RESPONDENT-APPELLEE'S DESIGNATION OF RELEVANT DISTRICT
COURT DOCUMENTS**

---

| DESCRIPTION OF ENTRY | PAGE ID # | RECORD ENTRY |
|---|---|---|
| Petition | 1-35 | R. 1 |
| Return of Writ | 48-88 | R. 7 |
| Ex. 1a- Indictment | 307-435 | R. 7-18 |
| Ex. 1b- Indictment | 436-551 | R. 7-19 |
| Ex. 3- Journal Entry | 553 | R. 7-20 |
| Ex. 4- Judgment of Conviction | 554-555 | R. 7-20 |
| Ex. 5- Sentencing Judgment | 556-557 | R. 7-20 |
| Ex. 6- Journal Entry | 558-559 | R. 7-20 |
| Ex. 11- Sentencing Judgment | 577-578 | R. 7-20 |
| Ex. 13- Appellant's Brief | 582-668 | R. 7-20 |
| Ex. 15- Ohio Court of Appeals Opinion | 687-716 | R. 7-21 |
| Ex. 16- Sentencing Entry | 717 | R. 7-21 |
| Ex. 17- Journal Entry | 718 | R. 7-21 |
| Ex. 19- Memorandum in Support of Jurisdiction | 721-771 | R. 7-21 |
| Ex. 20- Ohio Supreme Court Entry | 772 | R. 7-21 |
| Trial Transcript Vol. I | 829-1100 | R. 7-23 |
| Trial Transcript Vol. II | 1101-1360 | R. 7-24 |
| Trial Transcript Vol. III | 1361-1664 | R. 7-25 |
| Trial Transcript Vol. IV | 1665-1926 | R. 7-26 |

| | | |
|---|---|---|
| Bill of Particulars | 1968-2042 | R. 13-1 |
| Report & Recommendation | 2043-2090 | R. 14 |
| Cole's Objections | 2094-2119 | R. 16 |
| Warden's Objections | 2168-2190 | R. 17 |
| Order | 2235-2256 | R. 18 |